O

# United States District Court
# Central District of California

| | |
|---|---|
| SUSAN AILEEN WEDIN et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CARNIVAL CORPORATION et al.,<br><br>    Defendants. | Case № 2:24-cv-08035-ODW (JPRx)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART MOTION TO DISMISS [21]** |

## I.    INTRODUCTION

Plaintiffs Susan Wedin ("Wedin") and Robert Wedin, pro se, bring this action against Defendants Carnival Corporation ("Carnival") and Princess Cruise Lines, Ltd. ("Princess"). (First Am. Compl. ("FAC"), ECF No. 19.) Defendants move to dismiss the FAC as time-barred and for failure to state a claim or, in the alternative, to convert the motion to dismiss into one for summary judgment. (Mot. Dismiss ("Mot." or "Motion"), ECF No. 21.) For the reasons below, the Court converts the motion to dismiss into one for summary judgment on the time-bar issue, **GRANTS** the Motion for Summary Judgment, and **GRANTS IN PART** the Motion to Dismiss.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

On September 19, 2022, Wedin sustained injuries while playing a game onboard a Princess cruise ship, the *Grand Princess* (the "Ship"), on international waters. (FAC 4.) As part of the game, employees required Wedin to keep her hands behind her back. (*Id.*) Wedin, unable to brace herself, lost her balance and fell, hitting her face and head on the floor. (*Id.*) Before the game started, Princess's employees made "no announcement or indication that the game would be physically demanding or that [participants] would be required to keep [their] hands behind [their] backs." (*Id.*) Wedin and Robert Wedin previously participated in games while on the Ship, but those games were trivia-related and not physically demanding. (*Id.*)

Based on these allegations, Wedin initiated this action against Carnival and Princess. (Compl., ECF No. 1.) Wedin asserts a negligence claim against both Carnival and Princess for failure "to provide a safe environment for its passengers" and seeks compensatory, punitive, and loss of consortium damages. (*Id.* at 4.) On November 11, 2024, Wedin filed the operative First Amended Complaint naming Robert Wedin as an additional plaintiff seeking loss of consortium. (FAC 3–4.)

Defendants move to dismiss Plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6), on the basis that the claim is time-barred and that Plaintiffs fail to state a claim. (Mot. 1–2.) To the extent the time-bar issue requires the Court to consider documents beyond the four-corners of the complaint, Defendants request that the motion to dismiss on the issue of time-bar be converted to a motion for summary judgment. (*Id.*) Plaintiffs do not oppose this request; instead, Plaintiffs submit extrinsic documents in response Defendants' time-bar argument. (*See generally* Opp'n, ECF No. 24.[3])

---

[2] All factual references derive from the First Amended Complaint, unless otherwise noted, and well-pleaded factual allegations are accepted as true for the purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Plaintiffs submit two identical oppositions. (*See* ECF Nos. 22, 24.) For clarity, the Court cites only to the most recently filed opposition. (ECF No. 24.)

On May 1, 2025, the Court issued a Minute Order notifying the parties that it would consider converting the motion to dismiss to a motion for summary judgment as to the time-bar issue. (Min. Order 1, ECF No. 28.) The Court provided the parties an opportunity to present all material pertinent to the Motion on the time-bar issue. (*Id.*) In response, the parties submitted supplemental briefings and evidence. (*See* Pls.' Suppl. Br., ECF No. 29; Defs.' Suppl. Br., ECF No. 30.) The Motion is fully briefed. (Opp'n; Reply, ECF No. 25; Pls.' Suppl. Br.; Defs.' Suppl. Br.)

### III.     CONVERT TO A MOTION FOR SUMMARY JUDGMENT

Defendants ask the Court to convert their motion to dismiss into one for summary judgment on the time-bar issue. (Mot.; Mem. ISO Mot. ("Mem.") 11–13, ECF No. 21-1.) Defendants argue that Plaintiffs' negligence claim against Princess is time-barred under the Passage Contract that Plaintiffs signed before boarding the Ship. (Mem. 13–14.) In support, Defendants submit with their Motion a copy of the Passage Contract. (Decl. Scott Gerstl ISO Mot. ("Gerstl Decl.") Ex. E. ("Passage Contract"), ECF No. 21-2.) The Passage Contract is not part of any public record that can be judicially noticed, and is not referenced in the First Amended Complaint. Therefore, the Court cannot consider the Passage Contract without converting the motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 12(d).

**A.     Legal Standard**

On a Rule 12(b)(6) motion, if "matters outside the pleadings are presented to and not excluded by the court," the motion must be treated as a Rule 56 summary judgment motion, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the [Rule 56] motion." *Id.* Generally, the Ninth Circuit does not require "strict adherence to formal notice requirements." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). Instead, it examines whether the non-moving party was "fairly apprised that the court would look beyond the pleadings and thereby transform the 12(b) motion to dismiss into one for summary judgment." *Id*.

Represented parties who submit "matters outside the pleadings to the judge and invite[] consideration of them ha[ve] notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment." *Id.* However, when a party is proceeding pro se, the court must inform pro se litigants "that it is considering more than the pleadings, and must afford a reasonable opportunity to present all pertinent material." *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995); *see Garaux v. Pulley*, 739 F.2d 437, 439–40 (9th Cir. 1984) (holding that when the non-moving party is proceeding pro se, "the notice requirements of Rule 56(c) must be strictly adhered to when a motion to dismiss under Rule 12(b)(6) is converted into one for summary judgment.").

**B.   Discussion**

The Court finds it appropriate to convert Defendants' motion to dismiss on the time-bar issue into one for summary judgment.

Both parties present extrinsic evidence outside of the pleadings and rely on such evidence to make their time-bar arguments. (Mem. 6–9,13; Gerstl Decl. Exs. A–E; Opp'n 2–7, Exs. A–J, ECF No. 24.)   Courts have found the notice requirement satisfied in circumstances like those here, where Plaintiffs do not object to the conversion to a motion for summary judgment and, in their Opposition, submit extraneous material related to the Passage Contract and time-bar issue. *See e.g.*, *Olsen*, 363 F.3d at 922 (finding that a party had sufficient notice that the motion to dismiss may be treated as one for summary judgment where both sides included extraneous materials in their briefs); *Jinkins v. Temecula Towne Ctr. Assocs., LLC*, No. 5:18-cv-02281-PSG (KKx), 2019 WL 1652086, at *2 (C.D. Cal. Feb. 15, 2019) (finding notice requirement met where the plaintiff "does not object to the [c]ourt's consideration of [extraneous documents] and instead references it throughout the brief."). The Court also notified the parties of its intention to convert the motion into one for summary judgment and, with the utmost caution, afforded the parties "a reasonable opportunity to present all pertinent material" on the time-bar issue. *Lucas*,

66 F.3d at 248; (*see also* Min. Order.) Plaintiffs responded by filing a supplemental brief. (Pls.' Suppl. Br.) Thus, Plaintiffs had sufficient notice that the motion to dismiss would be treated as a motion for summary judgment.

Accordingly, the Court converts Defendants' motion to dismiss into one for summary judgment solely on the issue of whether Plaintiffs' negligence claim against Princess is time-barred. *See, e.g.*, *O'Connor v. Sheraton Operating Corp.*, No. 8:10-cv-00291-CJC (ANx), 2010 WL 11515257, at *3 (C.D. Cal. July 14, 2010) (converting a motion to dismiss on one issue into a motion for summary judgment because the issue required a "fact-intensive" inquiry). The Court first addresses the Motion for Summary Judgment, and then turns to the Motion to Dismiss.

## IV. MOTION FOR SUMMARY JUDGMENT

Defendants argue that the Passage Contract's one-year limitation period should apply, and since Plaintiffs did not file suit within one year of the date of injury, their negligence claim against Princess is time-barred. (Mem. 13–14.)

### A. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" if the evidence is sufficient for a "reasonable jury [to] return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). A genuine issue of material fact requires more than a "scintilla of evidence or evidence that is merely colorable or not significantly probative." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must establish that there are "genuine factual issues that . . . may reasonably be resolved in

favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 250). Where the moving and non-moving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.     Discussion**

Plaintiffs argue their claim against Princess is not time-barred because (1) federal maritime law provides a three-year statute of limitations for injury arising out of a maritime tort; (2) the Passage Contract's terms were not reasonably communicated to Wedin; (3) the Passage Contract was an unconscionable contract of adhesion; and (4) equitable tolling principles should apply to permit an extension of the filing period.[4] (Opp'n 2–7, 10–11.) The Court addresses each argument in turn.

*1.     Federal Maritime Law*

In the First Amended Complaint, Plaintiffs allege that Wedin was injured on international waters. (FAC 4.) In their Opposition, Plaintiffs first argue that federal maritime law's three-year statute of limitations should apply. (Opp'n 6.) Plaintiffs then allege for the first time in their Opposition that the injury occurred on territorial waters and that the laws of Bermuda, Canada, California, or Arizona should apply. (*Id.* at 10.) For the purposes of the motion for summary judgment, the Court limits its analysis to Plaintiffs' allegation in the First Amended Complaint that she sustained injuries on international waters. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (finding that the complaint "gave the [defendants] no

---

[4] Plaintiffs make two additional arguments: (1) "federal time bars are considered non-jurisdictional" and "can be waived by the parties or the court"; and (2) the six-year statute of limitation under the Administrative Procedure Act ("APA") begins to run when a plaintiff first suffers a legal wrong. (Pls.' Suppl. Br. 3–4.) The Court declines to address these arguments as they are inapplicable here—Defendants do not assert that a federal time bar applies, and Plaintiffs do not bring claims under the APA.

notice of the specific factual allegations presented for the first time in [the plaintiff's] opposition to summary judgment.").

Federal maritime law governs cruise line passage contracts. *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 834 (9th Cir. 2002). Federal maritime law also applies to torts when (1) the tort occurred on "navigable water" and (2) the tort has a "significant relationship to traditional maritime activity." *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009). Indeed, "virtually every activity involving a vessel on navigable waters would be a traditional maritime activity sufficient to invoke maritime jurisdiction." *Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2005) (quoting *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 542 (1995)). Personal injuries that occur while aboard cruise ships "consistently satisfy this test." *Maa v. Carnival Corp.*, No. 2:20-cv-6341-DSF (SKx), 2020 WL 5633425, at *8 (C.D. Cal. Sept. 21, 2020) (collecting cases).

Defendants seek to enforce the Passage Contract's statute of limitations provision. (Mot. 6.) The Passage Contract is a maritime contract governed by general federal maritime law. *Wallis*, 306 F.3d at 834. Furthermore, the injury occurred while Plaintiffs were aboard the Ship on international waters, and Plaintiffs seek relief for Princess's failure "to provide a safe environment for its passengers." (FAC 4.) The injury thus occurred on navigable water and relates to Princess's "treatment of paying passengers [which] clearly has potential to disrupt commercial activity, and certainly has substantial relationship to traditional maritime activity." *Id.* at 840–41; *see also Maa*, 2020 WL 5633425, at *8. Therefore, federal maritime law applies.

2.  *Statute of Limitations*

Generally, personal injury lawsuits that arise out of maritime torts are subject to a three-year statute of limitations. *Dempsey v. Norwegian Cruise Line*, 972 F.2d 998, 999 (9th Cir. 1992); *see also* 46 U.S.C. § 30106. However, Congress allows for parties to contract to shorten the limitations period to one year. *See* 46 U.S.C § 30526(b)(2); *see also Lano v. Carnival Corp.*, No. 2:13-cv-01718-PA (JCGx),

2013 WL 12171096, at *2 (C.D. Cal. July 31, 2013) ("Congress has authorized vessel owners to shorten the statute of limitations to one year."). "In order for a contractual limitation contained in a passage contract to be binding, the passage contract must 'reasonably communicate the limitation so that a passenger can become meaningfully informed of its terms.'" *Lano*, 2013 WL 12171096, at *2 (quoting *Wallis*, 306 F.3d at 835).

          a.  <u>Reasonable Communication</u>

Plaintiffs argue that they did not have reasonable notice of the one-year limitation in Princess's Passage Contract and therefore the shorter limitation period should not apply. (Opp'n 2.)

The Ninth Circuit employs a two-pronged "'reasonable communicativeness' test . . . to determine under federal common law and maritime law when the passenger of a common carrier is contractually bound by the fine print of a passenger ticket." *Wallis*, 306 F.3d at 835. Whether a passage contract provides reasonable notice is a question of law for the court to determine and requires "an analysis of the overall circumstances on a case-by-case basis." *Id.* To determine whether the passage contract's terms have been reasonably communicated to the passenger, the court must look to (1) the physical characteristics of the passage contract, and (2) the circumstances surrounding the purchase and retention of the passage contract. *Id.* at 835–36.

Under the first prong, the physical characteristics of a passage contract include the "size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question." *Id.* at 835. Here, the Passage Contract's physical characteristics conspicuously notifies passengers that the document contains Princess's contractual terms. The very top of the first page is titled "Passage Contract" in large font, and right below the heading is a subheading specifying the source of the contract as "Princess Cruise Lines, Ltd

1  Passage Contract." (Passage Contract 16[5].)  The first paragraph is near the top of the
2  first page, and reads as follows:

> **IMPORTANT NOTICE TO GUESTS: PLEASE CAREFULLY READ THE FOLLOWING PASSAGE CONTRACT TERMS THAT GOVERN ALL DEALINGS BETWEEN YOU AND THE CARRIER (DEFINED BELOW), AFFECT YOUR LEGAL RIGHTS, AND ARE BINDING ON YOU TO THE FULL EXTENT PERMITTED BY LAW; PARTICULARLY <u>SECTION 5</u> GOVERNING ELIGIBILITY REQUIREMENTS FOR SAILING, <u>SECTION 6</u>, WHICH CONTAINS IMPORTANT TERMS, CONDITIONS, POLICIES, PROCEDURES, AND REQUIREMENTS RELATED TO ISSUES OF PUBLIC HEALTH SUCH AS COVID-19, <u>SECTION 14</u> GOVERNING THE PROVISION OF MEDICAL AND OTHER PERSONAL SERVICES, <u>SECTIONS 15 AND 16</u> LIMITING LIABILITY OF THE CARRIER, THE VESSEL, AND OTHERS FOR YOUR DEATH, ILLNESS, INJURY, OR DAMAGE CLAIMS RELATING TO BAGGAGE OR PERSONAL PROPERTY, AND <u>SECTION 17</u> LIMITING YOUR RIGHT TO SUE, IDENTIFYING THE FORUM FOR SUIT, REQUIRING ARBITRATION AND WAIVER OF JURY TRIAL FOR CERTAIN CLAIMS, AND WAIVING YOUR RIGHT TO ARREST OR ATTACH CARRIER'S VESSELS.**

(*Id.*) This paragraph is written entirely in capitalized and bolded text, and against a white background. (*Id.*) It also begins with a conspicuous warning, stating "**IMPORTANT NOTICE**" and calls the passengers' attention to six sections of the Passage Contract which are "particularly" important for passengers to "carefully read." (*Id.*) The section relevant to the time-bar issue is listed in the first paragraph as "**<u>SECTION 17</u>**," bolded, underlined, and directly followed by the words "**LIMITING YOUR RIGHT TO SUE**." (*Id.*) The Ninth Circuit and courts in this district have found that notices placed at the beginning of a passage contract, similar to the one here, satisfied the reasonable communicativeness test. *See, e.g.*, *Dempsey*,

---

[5] The Court cites to the PDF pagination at the top right corner of the document.

1  972 F.2d at 999 (finding the use of "IMPORTANT NOTICE" "clearly informed
2  [plaintiff] that her rights were being limited"); *Osborn v. Princess Tours, Inc.*,
3  No. 2:95-cv-04584-DT (CTx), 1996 WL 364724, at *2 (C.D. Cal. Feb. 5, 1996) ("The
4  size of the type, the bold print, the use of contrasting colored ink and the frequent use
5  of uppercase letters in conspicuous spots all lend themselves to clarity of notice.").

6  Turning to "Section 17," the heading is similarly bolded and in all-caps, and
7  begins with the words "**17. NOTICE OF CLAIMS AND ACTIONS; TIME**
8  **LIMITATON** . . . ." (Passage Contract § 17.) The first paragraph of the section is
9  labeled and underlined "Claims for Injury, Illness, or Death." (*Id.* § 17(A)(i).) The
10 paragraph is written in plain English and is broken down by numbers, making the
11 paragraph easy to read. (*Id.*) The paragraph states that "no lawsuit may be brought
12 against Carrier unless . . . (2) a lawsuit on such a claim is filed within 1 year from the
13 date of the injury, illness or death." (*Id.*) The clause is clear that lawsuits against
14 Princess arising from injury must be filed within one year.

15 Plaintiffs argue that the Court should not use the physical characteristics test
16 because it is "unconscionable" to use case law that considers printed tickets here as
17 "this ticket was not physical but digital" such that there are "no physical
18 characteristics of the actual ticket." (Opp'n 5.) However, the reasonable
19 communicativeness test analyzes the physical characteristics of the Passage Contract
20 itself, regardless of whether the contract is in print or digital form. *cf. Archer v.*
21 *Carnival Corp.*, No. 2:20-cv-04203-RGK (SKx), 2020 WL 6260003, at *5–6
22 (C.D. Cal. Oct. 20, 2020) (finding the digital passage contract satisfied both prongs of
23 the reasonable communicativeness test without needing to consider that the contract
24 was not in print form). Accordingly, the characteristics of the Passage Contract and
25 Section 17 satisfies the first prong of the reasonable communicativeness test.

26 The second prong of the reasonable communicativeness test asks the court to
27 evaluate "the circumstances surrounding the passenger's purchase and subsequent
28 retention of the ticket/contract." *Wallis*, 306 F.3d at 836. Surrounding circumstances

can include the passenger's "familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Id.* (emphasis omitted). The second prong is more subjective in nature, permitting the court to assess the "extrinsic factors indicating the passenger's ability to become meaningfully informed." *Id.* (emphasis omitted).

Under the second prong, Wedin had sufficient time and means to inform herself of the Passage Contract's one-year liability limitation. On September 14, 2022, prior to boarding the Ship, Wedin read and accepted the terms and conditions of the Passage Contract on the Princess Cruise Personalization Application (the "Application"). (Gerstl Decl. ¶ 4, Ex. B ("Passage Contract Acceptance"), ECF No. 21-2.) Guests may only board the Ship when the Application indicates, with a green check mark, that the guest completed the "Passage Contract & COVID-19 Risk Acceptance." (*Id.* ¶¶ 5–6, Ex. D ("Application") 11[6], ECF No. 21-2 ("In order to embark, each adult guest must individually read and accept the following Princes Cruises Passage Contract . . . .").) Wedin had to scroll through the "IMPORTANT NOTICE" heading to complete the acceptance in the Application. (*See* Application.) Princess also made the Passage Contract available on Princess's website, providing Wedin with ample time to review the Passage Contract prior to boarding. (Gerstl Decl. ¶ 7.)

Wedin argues that the circumstances surrounding the Passage Contract worked against her because the Passage Contract was referenced on the Booking Confirmation as a web address, not a hyperlink, and she could not click on it. (Opp'n 5, Ex. A ("Booking Confirmation"), ECF No. 22.) This argument is unavailing as Wedin does not explain why she could not access the web address. Rather, the Booking Confirmation is another instance where Princess reminded passengers that they have

---

[6] The Court cites to the PDF pagination at the top right corner of the document.

agreed to the Passage Contract by booking the cruise, stating "IMPORTANT NOTICE: Upon booking the Cruise, each Passenger explicitly agrees to the terms of the Passage Contract (https://www.princess.com/legal/passage_contract/). Please read all sections carefully as they affect the passenger's legal rights."  (Booking Confirmation 2.)

Princess also reminded Wedin of the Passage Contract's terms after her alleged injury.  When cruise lines go "to great lengths to inform passengers of the various terms and conditions that could affect their rights," the Ninth Circuit has held that such information was reasonably communicated to the plaintiff.  *Dempsey*, 972 F.2d at 999.  After the injury, in January 2023, with eight months[7] remaining for Wedin to sue Princess, Princess's counsel reminded Wedin of the rights and limitations in the Passage Contract.  (Gerstl Decl. ¶ 11.)  Again, in March 2023, with six months remaining to bring suit, Princess's counsel forwarded the Passage Contract to Wedin's legal representative.  (*Id.*)  The Passage Contract was also available on Princess' website.  (*Id.* ¶ 7.)  Princess therefore provided Wedin with the time and incentive to familiarize herself with the Passage Contract, before and after her injury.  *See, e.g.*, *Osborn*, 1996 WL 364724, at *3 (finding plaintiff offered no facts disputing that plaintiff had the time and incentive to study the contract's provisions, especially after she was injured); *Archer*, 2020 WL 6260003, at *6 (finding it reasonable to expect plaintiffs "allegedly traumatized" after their cruise ship experience to review their tickets or contact an attorney).

Nevertheless, Wedin argues that the second prong is not met because Section 16 of the Passage Contract is unclear to "the average passenger with no legal background."  (*See* Opp'n 5.)  However, Section 16 discusses limitations on Princess's liability and is not at issue in this case.  (Passenger Contract § 16.)  The relevant section here is Section 17, which provides the statute of limitations.  As

---

[7] Pursuant to the terms of the Passage Contract, Wedin's last day to file a lawsuit was September 19, 2023.  (Mem. 13; Passage Contract § 17.)

discussed above, Section 17 clearly states that the statute of limitations is one year. (*Id.* § 17(A)(i).) The reasonable communicative test is met when, as here, the terms and conditions are "explicitly stated in the contract." *Wallis*, 306 F.3d at 839 (emphasis omitted) (collecting cases). Wedin therefore did not need legal knowledge to understand that she must bring her claim within one year, and, in any event, this term was also communicated to her legal representative after the injury.

With both prongs of the reasonable communicativeness test satisfied, the Court finds as a matter of law that Princess reasonably communicated the Passage Contract and its terms and conditions to Plaintiffs.

### b. Contract of Adhesion

Next, Plaintiffs argue that the Passage Contract's one-year limitation period is not enforceable because it is an unconscionable contract of adhesion. (Opp'n 2–4; Pls.' Suppl. Br. 3–4.)

Cruise line tickets are contracts of adhesion so "ambiguities in them must be construed against the carrier." *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1292 (9th Cir. 1997). Nevertheless, a cruise line contract may still be enforceable when the contract is not the subject of bargaining by its passengers. *See Carnival Cruise Lines, Inc. v. Schute*, 499 U.S. 585, 593 (1991) (declining to find a form ticket contract "is never enforceable simply because it is not the subject of bargaining").

To determine the enforceability of such a contract, courts examine whether the relevant provision was "unreasonable or fundamentally unfair." *Dempsey*, 972 F.2d at 999. In conducting its fairness analysis, the Court considers whether the passenger was aware of the relevant provision and whether the cruise line acted in bad faith or engaged in fraud or overreaching. *See id.* (finding the provision reasonable when the ticket put plaintiff on notice that her rights were being limited, and cruise line did not engage in bad faith); *Schute*, 499 U.S. at 595 (finding the provision reasonable because plaintiffs had notice of the forum provision which presumably gave plaintiffs

the option to reject the contract without consequence and the cruise line did not engage in bad faith).

Plaintiffs argue the statute of limitations is unfair because it (1) shortens her right to sue for liability when maritime law allows for a three-year statute of limitations, (Opp'n 6), and (2) requires a passenger to accept a one-year statute of limitations when a Google Search for "California Personal Injury Statute of Limitations" provides results showing a two-year statute of limitations, (Pls.' Suppl. Br. 3–4). As previously discussed, federal maritime law applies because Plaintiffs allege that the injury occurred on international waters. Congress permits vessels to shorten the statute of limitations to one year. *See* 46 U.S.C § 30526(b)(2). Accordingly, Plaintiffs' arguments regarding maritime and California statute of limitations does not change the analysis.

Plaintiffs present no evidence that the Passage Contract's terms were unfair or that Princess acted with bad faith. The Ninth Circuit has found passage contracts that similarly limit a passenger's ability to bring suit to one year, like the one here, to be "reasonable and fair." *See e.g.*, *Dempsey*, 972 F.2d at 999–1000. This is based on the reasoning that Congress permits such a one-year limitation period. *Id.* Plaintiffs also fail to raise any facts to show that Princess acted in bad faith or engaged in fraud or overreaching. Plaintiffs were on notice that the Passage Contract limited their rights, and the language of the limitation was clear. (*See* Passage Contract § 17(A)(i).) Notably, Princess reminded Wedin and her legal representative of the statute of limitations after the injury occurred and before the time to sue lapsed. (Gerstl Decl. ¶¶ 7, 11.)

Accordingly, viewing the facts in the light most favorable to Plaintiffs, there is no material dispute of fact that the Passage Contract is enforceable.

    c. <u>Equitable Tolling</u>

Finally, Plaintiffs argue that the one-year limitation period should be extended using equitable tolling principles due to Wedin's misunderstanding of the limitations period and her medical condition. (Opp'n 10–11; Pls.' Suppl. Br. 2–3.)

Courts apply equitable tolling sparingly and typically only in limited circumstances. *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly . . . ."). Equitable tolling may be invoked to excuse a failure to comply with time limitations where a claimant did not have actual or constructive notice of the filing period. *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). The party seeking equitable tolling bears the burden of showing (1) she has been diligent in pursuing her rights; and (2) "some extraordinary circumstance stood in [her] way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Courts are generally "much less forgiving in receiving late filings" when plaintiffs miss a filing period because they failed to exercise due diligence to preserve their rights. *Irwin*, 498 U.S. at 96. Furthermore, a "lack of 'legal sophistication' is not, by itself, an extraordinary circumstance" that would entitle a pro se plaintiff to equitable tolling. *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).

Here, equitable tolling does not apply to extend Plaintiffs' time to sue Princess. Plaintiffs first argues that as "layperson[s]," they mistakenly believed the three-year statute of limitations period under maritime law applied and that their belief arose from "a lack of clear understanding of the one-year limitation in the contract." (Opp'n 10.) However, that Plaintiffs are laypersons does not, by itself, entitle them to equitable tolling. *See Raspberry*, 448 F.3d at 1154.

As discussed above, the Passage Contract was clear that a passenger has one year to file suit after injury. (*See* Passage Contract § 17(A)(i).) Plaintiffs were required to read and accept the Passage Contract's terms prior to boarding, (*Id.* ¶ 6), and they did not have to look any further than the Passage Contract itself to understand there was a one-year time limitation. Instead, Plaintiffs went outside of

1 the relevant provision in the contract to find the three-year statute of limitation period,
2 even after Princess reminded them and their legal representative of the Passage
3 Contract's terms and conditions six to eight months prior to the lapse date.

4     Plaintiffs also argue that Wedin's medical condition constitutes extraordinary
5 circumstances warranting tolling. (Opp'n 10; Pls.' Suppl. Br. 2–3.) Plaintiffs assert
6 that their inability to file suit was "impacted by the recurrence of symptoms related to
7 post-concussion syndrome." (Opp'n 10.) They explain that Wedin's symptoms
8 "temporarily subsided" which created the "impression that no further claims were
9 necessary," and that Plaintiffs acted "promptly" to address their rights upon recurrence
10 of Wedin's symptoms. (*Id.* at 10–11.) However, that Wedin's symptoms temporarily
11 subsided did not prevent her from bringing suit. While Wedin may have believed her
12 symptoms subsided, she was still aware of her initial injuries and her rights well
13 before the time lapsed to bring suit. Wedin communicated with Princess about her
14 injuries as early as November 14, 2022, and her lawyer communicated with Princess
15 about the claim on January 17, 2023. (Decl. Scott Gerstl ISO Defs.' Suppl. Br.
16 ("Gerstl Suppl. Decl.") ¶ 2, ECF No. 30-1.) Yet, Wedin did not file suit until
17 September 17, 2024. (Compl.) This argument is therefore unpersuasive.

18     Accordingly, Plaintiffs are not entitled to equitable tolling because they fail to
19 raise a material dispute of fact that extraordinary circumstances prevented them from
20 bringing suit within the statute of limitations.

21 **C.   Conclusion**

22     For the reasons discussed above, the Court **GRANTS** Defendants' Motion for
23 Summary Judgment as to Plaintiffs' negligence claim against Princess based on
24 injuries allegedly sustained on international waters as time barred.

25                     **V.   MOTION TO DISMISS**

26     Turning to the Motion to Dismiss, Defendants move to dismiss Plaintiffs'
27 negligence claim against Carnival under Rule 12(b)(6). (Mem. 14–16.)

28

### A. Legal Standard

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B. Discussion

Defendants move to dismiss Plaintiffs' negligence claim against Carnival and requests for loss of consortium and punitive damages. (Mem. 14–16.)

In the First Amended Complaint, Plaintiffs name Carnival as a Defendant but plead no factual allegations against Carnival or describe Princess's relationship to Carnival. *See* Fed. R. Civ. P. 8(a)(2); *cf. Archer*, 2020 WL 7314847, at *6 (declining to dismiss parent company defendant because plaintiffs sufficiently alleged parent company exerted control over its subsidiaries safety procedures and thus owed plaintiffs an independent duty of care). The Court cannot infer, based solely on

Plaintiffs' inclusion of Carnival as a named defendant, that Carnival is somehow related to this lawsuit. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES WITH LEAVE TO AMEND** the negligence claim against Carnival. As the underlying negligence claim fails, the Court also **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' loss of consortium claim. *See Pearson v. Loancare, LLC*, No. 2:23-cv-03882-DSF (MRWx), 2023 WL 9687606, at *4 (C.D. Cal. Dec. 12, 2023) (dismissing the loss of consortium claim when the other tort claims fail); *Paturzo v. Bos. Sci. Corp.*, No. 8:16-cv-2174-JLS (KESx), 2017 WL 8220706, at *3–5 (C.D. Cal. Sept. 5, 2017) (same).

In addition, Plaintiffs seek punitive damages in their First Amended Complaint. (FAC 4.) Defendants move to dismiss Plaintiffs' request for punitive damages on the grounds that Plaintiffs do not plead facts that suggest Defendants engaged in "malicious, harsh, severe, or oppressive conduct to support a claim for punitive damages." (Mem. 16.) In their Opposition, Plaintiffs concede this argument, stating that "[t]he punitive damages request was removed" in the First Amended Complaint. (Opp'n 11.) In light of Plaintiffs' concession and their intent to remove the request for punitive damages, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' request for punitive damages.

## C.  Conclusion

In sum, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiffs' claim against Carnival.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Motion for Summary Judgment and **GRANTS IN PART** the Motion to Dismiss. (ECF No. 21.)

Specifically, the Court **GRANTS** summary judgment in Defendants' favor as to Plaintiffs' negligence claim against Princess as time barred. Further, the Court **GRANTS IN PART** the Motion to Dismiss as to Carnival and **DISMISSES** (1) Plaintiffs' negligence claim against Carnival, including the request for loss of consortium damages **WITH LEAVE TO AMEND**, and (2) Plaintiffs' request for punitive damages **WITH PREJUDICE**.

If Plaintiffs choose to amend, the Second Amended Complaint is due no later than **twenty-one (21) days** from the date of this order. Plaintiffs' amendment must be limited to Wedin's negligence claim against Carnival, and Robert Wedin's loss of consortium claim against Carnival. If Plaintiffs do not timely amend, this dismissal shall be deemed a dismissal with prejudice.

**IT IS SO ORDERED.**

June 10, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**